The second case for argument is United States v. Jayden Debevec. All right, Mr. Miller, we'll hear from you first. May it please the Court, good morning. My name is Darren Miller and I represent Jayden Debevec on this matter. Your Honors, after jury trial, Mr. Debevec was convicted of intent enticement of a minor. At trial, he raised the defense of entrapment and the district court found that there was evidence of inducement and instructed the jury on entrapment. The jury rejected that defense. On appeal, we are asking this Court to reverse Mr. Debevec's conviction on the basis that the government failed to disprove entrapment beyond a reasonable doubt. And alternatively, we're asking this Court to reverse and remand for new trial due to the improper admission of other acts of evidence. I intend mostly to focus on the first argument and, time permitting, I'll get to the second. Your Honors, as I'm sure you know, entrapment has two elements. The government's required to prove that it did not induce the defendant to commit the charged crime and that the defendant was not predisposed to commit the charged crime. I think the case law shows that those two elements are very closely related. Obviously, the more inducement, it will trigger the predisposition, essentially. But here, the government failed to prove that Mr. Debevec was predisposed to commit the charged offense. And I'd like to really focus on the evidence because this is very fact-specific. And Mr. Debevec met, I guess you'd say, or contacted the undercover persona Zoe on an adults-only app called Meet Me. Zoe represented herself to be 18 years old. There was a picture of Zoe, I believe two pictures of Zoe in a sports bra. And essentially, there is no indication that Mr. Debevec was seeking out minors. He was on an adults-only website and contacted the person who represented themselves to be an adult. What do we do with the short time span here? This is about, what, 48 hours, two days or so from the time of the first contact to the time of his arrest. Is that standing alone enough to show either lack of propensity, that's what you're focusing on, lack of, I'm sorry, that he was predisposed? Yeah. No, I don't think there's any one magical element. How about this was pretty fast? How much weight do we put on that? Well, I mean, I guess that would ultimately be up to your honors, obviously. But our position is that when you look at the context of this, Mr. Debevec's mental state, including that he had communicated to this undercover officer that he was lonely. When you look at the protocols of what the undercover personas were supposed to be doing, which was let the defendant or the suspect lead the way, the tone of the conversation, to bring up sexual, basically to bring up sex, that's not the way that this went. So is this what you're meaning when you say inducement and predisposition are very closely related? Yes, that's correct, Judge. And when you look, in fact, the protocol was to let the defendant control the tone. And basically, if he's supposed to, if he wants out, just let him out and essentially let him decide. So when you look at what happened even at the start of this, when Zoe switched it up, more or less a bait-and-switch type of a tactic that they were implying. And he disclosed many times she was 15. Yes, yes. And Zoe conditioned that on saying, don't be mad at me, trying to find the exact language, promise not to boot me off. Were there any opportunities that the agent, acting as Zoe, did he give, or Zoe give your client any off-ramps, sort of opportunities to get out of this? Because that's what I understand part of the protocol is. You set it up so that you give the target some opportunity to take an off-ramp and end the conversation. Were there any of those opportunities here? I mean, there's always, I guess, an off-ramp. I mean, always someone is capable of ending. Or maybe I misunderstood the agent's testimony, because I thought he was saying that we try to sort of back off a little bit sometimes and not be the one to push to see if maybe they just sort of exit on their own. Maybe I misunderstood the testimony. And maybe I'm not, maybe I did also, Your Honor, but my understanding is essentially that, and it makes sense. If you want to show that someone's predisposed to commit an offense, especially someone who's contacting an adult, don't see what he says. When they just, the agent should have just simply said, hey, I'm 15, and seen how Mr. Dubevic responded. But that's not how this all transpired. The only thing that was added to 15 is, don't be mad at me, right? I believe so. That's correct. So then after Zoe claimed that she was 15 years old, it was a lot of flirtation, sexual innuendo, which are factors that go into this, and I can point some out. Zoe said, oh, I'm not attracted to boys my age. She has a whole house to herself. Her parents treat her like an adult. And then at some point, Mr. Dubevic starts discussing that he lives in an RV and asked Zoe, have you ever thought about living in an RV? Kind of general conversation, and Zoe said, oh, doesn't it get cold in your RV at night all by your lonesome? And then Mr. Dubevic responded by saying, well, yeah, it doesn't get cold. And he actually took that kind of literally. He said, well, it's got insulation. It's not cold. And then he admitted to Zoe, the undercover and the undercover persona, that he was, in fact, lonely. So rather than doing what the undercover persona should do and just let Mr. Dubevic control this conversation, they persisted. You're too nice and cute to be lonely. So again, more flirtation, sexual innuendo, and this is after Mr. Dubevic disclosed that he's lonely and perhaps vulnerable to this type of manipulation. Can I ask you about some of the evidence that was introduced, I think, to show the predisposition? And that's the, I'll call it the anime. And as I understand, that was introduced to show that he was predisposed. Am I right? Yes. Can you explain a little bit more of that? Was the testimony that this was just young-looking cartoon-like characters? Was it ultimately unlawful to possess if he had actually received it? What was the nature of that testimony? My recollection is, Your Honor, that they didn't find any of this lowly anime. They didn't present the evidence that Mr. Dubevic even is aware of what that term means. Well, he had done the Searchers Council. Yes, he did. He was on a major retailer website. He wasn't searching the dark web or anything. He was on, I believe it was Amazon. And it just showed a couple of, I think three or four, if I recall correctly, just searches of like lowly. And what was the testimony about what that was? You've said there's no evidence that he understood what it was, but what did the jury hear that it was? Yeah, the jury heard one of the officers apparently did a Google search of lowly. And it came up as something like improper or sexual material or something like that. So did they hear one way or another whether ultimately this type of material that was searched for would have been unlawful to possess? No. In fact, I don't think that it is unlawful. I could be wrong about that, but no. I don't believe there's any evidence of that. And again, there is no evidence that he is even aware. Coming into this, I wasn't aware of what that is. My recollection is that the defense wanted to put in some expert testimonies to what that meant. And the judge held that lay people would know what lowly meant. What about the anime, though? I mean, it wasn't just lowly search, wasn't it? Wasn't it also some kind of... I believe it was like lowly hentai. And I believe hentai was defined as like animation and lowly was like younger. So my understanding is that he was searching, again, on a retailer's website, which would not be selling illegal material, presumably. And there's no evidence that he got it. And by the way, there is no evidence that he had any other proclivities and no evidence that he'd had prior convictions for going after minors. No testimony that, oh, Mr. Dubovik, he was creeping around. No, nothing like that. It's just the only evidence, aside from this conversation, is just a brief search for lowly. And that's it. And our position is that that's just not enough. Not enough to show predisposition or what? Yes, but not enough to prove beyond a reasonable doubt that Mr. Dubovik was predisposed to commit the offense charged. And I think when you look at how closely tied predisposition is with inducement, I mean, essentially, if you're going to if there's no proof beyond a reasonable doubt that he was predisposed, well, then the only thing that could have caused this would have been the inducement. There's unquestionably at least some inducement. In fact, the district court instructed, gave the instruction because it made a finding that there was inducement. And then at that point, that triggers the government's burden to prove beyond a reasonable doubt that Mr. Dubovik was predisposed. And I also point out that the predisposition is not just that he's predisposed. Even if they establish, oh, he's predisposed, he had some interest in younger people, that's not enough. They have to prove that he's predisposed to commit the offense of attempt enticement to a minor. And when you look at this evidence, that just fails. We're a little bit low on time, but there was a lot more sexual innuendo, including Zoe saying, oh, use your imagination. And I'm tingling over just otherwise inane conversation, just like, oh, are we going to meet? Oh, you got me tingling. So all this, when it adds up, and particularly when you look at why Mr. Dubovik, that he was initially contacting and reaching out to someone representing themselves to be an adult, the evidence of predisposition is lacking. And I'll reserve time if that's permissible. You may. Thank you. Thank you for your argument. Mr. Coloner, we'll hear from you. Good morning, and may it please the Court. My colleague, Mr. Miller, I'm Kevin Coloner with the U.S. Attorney's Office in South Dakota. I'm here today asking that this Court affirm the conviction for attempted solicitation of a minor because the government disproved entrapment here. The government has proved entrapment? Has disproved. Disproved entrapment. Sorry if I misspoke, Your Honor. It is hard to imagine a case that could be more on point than the U.S. v. Hannipol case that was decided by this Court in 2024. Same defense with respect to a claim that the government failed to disprove entrapment. Same agent, same kind of sting, same kind of language. Same evidence of a defendant who at first was concerned about the age, but then went forward after learning that the victim was a minor. Same evidence of the defendant introducing the most sexual talk. Frankly, the same evidence of some sort of flirtatious or at least conversation teetering on flirtation from the undercover agent. If I didn't mention it, same agent involved here, so essentially the same witness. That case, I think, really just decides this on all four corners, and it really couldn't be much more on point. Now, I want to talk about a couple things first. It was said here that the district court made a finding of inducement. That's a jury question. What the district court decided was that there was sufficient evidence for a jury instruction here, so I just want to be clear about that. There wasn't a court determination that he was, in fact, induced on the first prong. I want to talk about what's acknowledged in Mr. Dabewicz's brief. He acknowledges that he messaged first. He reached out to what turned out to be an undercover agent. Isn't that sort of neutral, though? He's reaching out to an adult's website, or I don't even know what you call it. Absolutely, but it is one of those factors of inducement that this Court has discussed in other cases, so I just point that out. It's not a case here where the government has found someone they want to prosecute, and then suddenly they're providing them with this opportunity to at first meet. One set of communications between the agent and the defendant, sort of toward the end, when he's like, well, my RV may not work, or I don't have a ride, and, boy, there must be a way to get there. There must be 10 or 12 messages where she's sort of pressuring him, don't stand me up, you're wasting my time, get an Uber. Now you're making me mad at me. That came around pretty quickly in the court. This is a pretty tight time frame. That sort of stood out to me. Well, I mean, you look at the sorts of things that this Court has found to be inducement, and we're talking about, I mean, there's the one case where the Court turned a heroin addict into a heroin, or the Government turned a heroin addict into a heroin dealer. We're talking about real coercion. You're making me mad. I'm sitting here waiting for you. I think they even sent a picture from the picnic shelter. What about putting it together with the closely related predisposition? Because there's not a lot here on predisposition. Well, I guess I would disagree with that. Maybe I'll ask you the questions about the anime. Can you give me a little bit better sense of what the testimony was on that? Is that always an unlawful sort of imagery, or was the Government more pushing that it was just young? Can you give me a little bit better understanding what the jury heard about those images that were sought? The jury heard testimony generally about the law enforcement witnesses' understanding of what those terms meant. Lolly and having some reference to Lolita, which, of course, the Court's aware of as being a search term. It's often used in child pornography searches. The agent was upfront that these were just searches, that there was no evidence that anything was found in response. To your question of whether anime can be illegal, I think there are statutes under which certain anime can be illegal. But here we don't have any anime that was actually found on the defendant. And that was all put before the jury. The Government witness testified at some length about this and was very clear that these were just searches that were near in time that showed a sense of predisposition. Now, one thing I'd also point out, I don't think it was only about predisposition here. As soon as this defendant is arrested, one of the things he says is something we commonly see in these sting cases, which I wasn't there. I wasn't there to have sex with anyone. I was there to, you know, help this child, counsel this child. So, you know, it's also relevant to show the intent of why they were going there. It undermines that defense. Now, I guess that goes hand in hand with predisposition in a certain sense. But in terms of its 404B relevance, it is a material issue that essentially was put out there in trial that potentially there was this defense that he was there not intending to have sex with anyone. I understood your comments about the opening case, and of course it's throughout your brief. But I noticed a difference in Hannibal's. Hannibal admitted upon being arrested that he traveled to the school to have sex with the girl. That's not true in this case, right? Well, eventually he admitted in this case. Okay. Tell me what the extent of the admission, because I didn't get that. I don't want to misspeak, Your Honor, but I don't have it exactly in mind, the words. I believe it is in the transcript, but after some questioning with different agents questioning him, he ultimately admitted that he was there to have sex, that he would have had sex. Thank you. Now, intending to have sex is not an element of this offense, right? And we've dealt with that question before. All you have to do is show an attempt to entice. So, but I believe it becomes important here when a defense is that I didn't intend to have sex with anyone, then suddenly it undermines his credibility in the claims that he's making. And if I'm right, you also introduced the WhatsApp conversation with the adult for the intent, correct? That's right, and that was, well, not necessarily the intent with respect to having sex with a child, but in that WhatsApp conversation, it was within the same time that he was conversing with this agent. I think the same day that the conversation started with the agent, he was having that conversation on WhatsApp. He also sent the same shirtless photo. He also gave, discussed where he wanted this sex act to occur, which was his place of employment. Same thing that he did here. Did the government argue that for predisposition as well? I believe so, in the closing, that there was an argument that this showed that he was intending to use the Internet to find sex, essentially. But the predisposition is to entice a minor, right? So I understand, I think, the government's theory on the 404B for intent, what was his intent to show up there. I'm questioning whether you can use a solicitation of sex with an adult as predisposition for enticing a minor, which seems to me a fundamentally different goal. I don't disagree with Your Honor, and if that's all we had here, I'd have a much more difficult argument. I don't think we've ever argued that that was the only evidence of predisposition. And I think it's indicative that he's using the Internet at that very same time to try to have sex with a stranger that he's meeting. But it's predisposition to commit a crime, right? Am I right? So not predisposition to sort of engage generally in sexual activity. And that's where this is an interesting case, because you've got perhaps evidence that is relevant for 404B, but interestingly, in this context, perhaps inadmissible for predisposition. Or not relevant to predisposition. Potentially, but I guess I would just rely on harmlessness here in terms of all the rest of the evidence. I mean, I mentioned that he was the one who messaged first. That's just one thing. He also, she said she's younger, specified that she was 15. I think there were at least four or five times within the chat where the undercover agent makes it very clear the age. Every single time that they say 15, that's an off-ramp, right? Switch over to text messages. He did an off-ramp there. He introduced meeting up. He told her that she was beautiful. That's the first sort of flirtation. He asked for more pictures. He responded via text when they switch over text. He responded that she could show him how mature she was when they met. He messaged her that next morning, right away, bright and early, when she didn't message back. He then messages a little later. He sends a shirtless picture in that message. And then, of course, there's those incredibly sexually explicit messages that he decides to send at that point in the conversation, which, you know, I could repeat all that language here, but, of course, the court has that. Does our case law say anything about the importance of the speed with which the target responds affirmatively and agrees to meet up? I mean, I think that's a factor when considering these entrapment elements. Certainly, it doesn't vote in favor of a defendant when they are trying to meet up with him. It's not helpful to a defendant in 24 or 48 hours of the first conversation. You know, that was another factor, I think, noted by the court in the Hannibal case, that that was also a situation where, boy, it was just a matter of hours between the first communications and there he is getting arrested in a parking lot. So I think it's not helpful to a defendant on these elements. I guess it's just yet another point. Counsel, surely the admission of the conversation with the adult is improper. I mean, after all, the foreign country code, and very quickly she turns to wanting money, sits somewhere and very quickly, you know, there's no pictures, right? He asks for pictures, he doesn't get any, correct? I think that's right. He asks for nude pictures, of course, and just all the facts of that. The district court even kind of said that, but then let it in. How can you justify it? Well, that was all subject to cross-examination. I mean, you're right about all those things, Your Honor, and you know who else knew that? The jury. Right? That was put out, those discrepancies between those communications and the communications with the undercover, that was all front and center. So, you know, I think that's full 4B evidence that perhaps could have gone either way. Now, on the other side of the coin, we do have use of a mobile application to solicit sex. We've got the same day, we've got shirtless photo, we've got the same location to try to bring someone back to have sex, so there are some similarities there. Now, illicit sexual activity, of course, we're talking about prostitution here, different crime, but still illicit sexual activity, so there are some similarities. So I don't know that I agree with your premise, Your Honor, that this is so clearly outside the bounds. I think it's a close call, and then we go to the question of, you know, did this prejudice this defendant on this record? And I think it's, you know, I'll just go back to the Hannibal case. Again, I just don't think you can find a case that's more clearly on point or more recent in this Court's jurisprudence. And Hannibal, it has a bikini picture eventually, does it or not? In this case, it doesn't have that, it has a standard sports bra. Right. Frankly, the agent learned a lesson from the Hannibal decision in the sense that they didn't use. That was the key argument in Hannibal, was that these photos were too lascivious. And so, I mean, as we talk about, one of the pictures that was sent here wasn't even an aged regress photo. It was a photo of an actual 14-year-old, which was, you know, one of the officers involved when she was 14. It was, as we describe it, and I think fairly in our briefing, that it's a photo that you might use on a family holiday card. So in a sense, Hannibal was worse for the government in terms of these inducement and entrapment factors. I'm out of time, Your Honors. Unless there's further questions, I'll take my seat. Thank you. Very well, thank you. Thank you for your argument. Mr. Miller, we'll hear rebuttal. Just factual clarification, I believe it was Judge Benton's question. Mr. Dubovik, during the interrogation, did not admit that he was there for sex. I thought that was true. And in fact, he noted that he did not bring the office keys, which is according to the government's version, where he was intending to bring her to have sex. And just briefly on Hannibal, I agree with Mr. Calder that some of the facts in Hannibal are similar, but there are also some significant differences. Hannibal did not involve the defendant saying that he was lonely. It did not involve... Essentially, the inducement was a lot more severe here than in Hannibal. The undercover agent there did not use terms like tingly and just didn't go on and on and on trying to get that defendant to have sex. And in fact, in Hannibal, I believe this is a quote, Hannibal, quote, showed no hesitation apart from his initial... Apart from when he initially said, oh, well, you're too young. But after that, this Court held that he showed no hesitation, and there was a lot of hesitation here. It looks like I'm out of time, and I would ask this Court to reverse Mr. Dababek's conviction and alternatively remand for new trial. Thank you for your argument.